UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ELVIS JOSE REYES SIRA,

Petitioner,

v.

MARKWAYNE MULLIN, *et al.*,

Respondents.

CASE NO. 2:26-cv-03899-GJL

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Elvis Jose Reyes Sira ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On October 13, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from custody and injunctive relief related to re-detention.[1] *Id.* Respondents to the Petition include Markwayne

[1] Petitioner's Petition was filed with his counsel's verification of the contents presented therein. *See* Dkt. 1 at 28; 28 U.S.C. § 2242 (habeas petitions must be "signed and verified by the person for whose relief it is intended or by someone acting in his behalf."); *see also* Local Rule W.D. Wash. 100(e) ("If a petition or motion is not made and verified by the party in custody, the person making such petition or motion shall verify the same on behalf of such party in custody, and shall set forth therein the reason why it is not made and verified by the party in custody, and shall state he or she knows the facts set forth therein, or if upon information and belief, the sources of his or her information shall be stated.").

Mullin (the Department of Homeland Security ("DHS") Secretary), David Venturella (Acting Director, ICE), Julio Hernandez (Field Office Director for ICE's Seattle Field Office), and Bruce Scott (Warden of the NWIPC).[2]

On October 28, 2026, Respondents filed a Return (Dkt. 5), along with a sworn declaration from ICE Deportation Officer Matthew Smith (Dkt. 6), and an unsworn declaration from their counsel, Peter H. Clark (Dkt. 7). Petitioner filed a timely Traverse in reply on November 1, 2026. Dkt. 8.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition **IN PART** and **ORDERS** Petitioner's immediate release and injunctive relief as set forth below in the conclusion below.

## I. BACKGROUND

Petitioner, a native and citizen of Venezuela, entered the United States without inspection near El Paso, Texas,[3] on April 4, 2024, and was apprehended by U.S. Customs and Border Patrol. Dkt. 6 ¶ 4 (Smith Decl.). On April 4, 2024, Petitioner was issued a Notice to Appear ("NTA"), charging him as inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), which was subsequently filed with the Executive Office of Immigration Review. Dkt. 6 ¶ 5; Dkt. 7-1, Ex. 1. The next day, April 5, 2024, Petitioner was released from immigration custody pursuant to an Order of Release on Recognizance ("OREC"), with Alternative to Detention ("ATD") conditions including GPS monitoring, self-report check-ins, and home visits. Dkt. 6 ¶ 5; Dkt. 1 ¶ 3. On May 28, 2024, Petitioner was enrolled in SmartLINK software monitoring, which served to modify the GPS monitoring condition. Dkt. 6 ¶ 6. After a period of time, Petitioner's ankle monitor was

[2] The Parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 3.

[3] The Notice to Appear identifies Petitioner's entry as occurring near El Paso, Texas (Dkt. 7-1, Ex. 1), but the I-213, Record of Deportable/Inadmissible Alien, identifies Ysleta, Texas (Dkt. 7-2, Ex. 2).

removed due to good behavior, and he was required to download an application to his phone for purposes of reporting. Dkt. 1 ¶ 4; Dkt. 1-2, Ex. A (Reyes Sira Decl.).

Since his release, Petitioner has lived in Kent, Washington, with his sister and her girlfriend, assisted his sister with work, as well as contributed to rent and household food expenses. Dkt. 1 ¶ 6. He maintains a Washington driver's license and has no known criminal history. *Id.* ¶ 7. On April 3, 2025, Petitioner timely filed a Form I-589, Application for Asylum and for Withholding of Removal. Dkt. 7-2 at 4, Ex. 2.

According to Respondents, between May 29, 2024, September 7, 2026, Petitioner accrued ATD violations that included five missed biometric check-ins, three failed virtual home visits, three missed in-person office visits, and one failed in-person home visit. Dkt. 6 ¶ 7. Petitioner disputes the Government's characterization of his reporting history, noting reporting problems due to health-related absences and a change in address, but also acknowledging some missed requirements such as photograph submissions. Dkt. 1 ¶¶ 4–15.

On September 23, 2026, ICE arrested Petitioner at a scheduled check-in, made an individualized assessment after reviewing ATD records and detained Petitioner pursuant to an I-200, Warrant of Arrest. Dkt. 6 ¶ 8; Dkt. 7-3, Ex. 3. Petitioner was then transferred to NWIPC, where he remains detained. Dkt. 6 ¶ 8. Further, Petitioner's removal proceedings are pending in the Tacoma Immigration Court. *Id.* ¶ 9.

Petitioner filed the instant Petition pursuant to 28 U.S.C. § 2241 on October 13, 2026. Dkt. 1. On October 14, 2026, the Court entered a Scheduling Order, directing a response to the Petition by October 28, 2026, and a reply by November 2, 2026. Dkt. 2. Respondents filed a Response on October 28, 2026, followed by Petitioner's Traverse on November 1, 2026. Dkts. 5, 8.

## II. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Due process protections extend to all individuals within U.S. borders, including noncitizens, regardless of their immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Procedural due process demands meaningful notice and a genuine opportunity to be heard before the federal government infringes upon a liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Courts in the Ninth Circuit apply the *Mathews* balancing test in the immigration detention context, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the Government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

## III. DISCUSSION

Petitioner alleges Respondents violated constitutional guarantees of due process under the Fifth Amendment by re-detaining him without pre-deprivation notice and a hearing (Count Three). Dkt. 1 at 1217; 22–26. Petitioner also alleges his re-detention is in violation the Administrative Procedure Act ("APA") (Counts One & Two). *Id.* at 19–22. Respondents acknowledge that Petitioner did not receive a pre-deprivation hearing, but argue that Petitioner is properly detained under 8 U.S.C. § 1225(b). Dkt. 5 at 5–6.

As a threshold matter, the Court again rejects Respondents' mandatory detention argument and its continuing effort to expansively wield the discrete authority of 8 U.S.C. § 1225(b) as a cudgel to abruptly and without notice confine noncitizens such as Petitioner who had been released on an OREC for more than two years. *See, e.g., Singh v. Mullin*, No. 2:26-cv-03490-GJL, 2026 WL 3031309, at *3 (W.D. Wash. Oct. 9, 2026) (quoting *Singh v. Mullin*, No. 2:26-cv-01730-GJL, 2026 WL 2111274, at *2 (W.D. Wash. July 22, 2026) ("[T]his Court has previously rejected [the Government's] mandatory detention argument and does so again here.")). And even if the Court were somehow persuaded by this misplaced argument, Respondents must still comply with due process. Thus, the Court turns to whether Petitioner's continued detention without an individual custody determination comported with due process under the familiar framework set forth in *Mathews*, 424 U.S. 319.

In their Response, Respondents acknowledge that courts have found due process is violated when noncitizens released on an OREC are re-detained without a pre-deprivation hearing and have ordered their immediate release. Dkt. 5 at 6 (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316; *Mendez Rodriguez v. Hernandez*, No. 2:26-cv-02620-GJL, 2026 WL 2546112, at *3-4 (W.D. Wash. Aug. 28, 2026)). Respondents further recognize the facts in this case are similar to prior cases where courts have found that ICE violated due process when re-detaining a noncitizen for violations of an OREC without a pre-deprivation hearing. Dkt. 5 at 6 (citing *Singh*, 2026 WL 2111274, at *4). Finally, with no further discussion, Respondents simply state that, "while Federal Respondents do not agree to the issuance of a writ and reserve the right to appeal, Federal Respondents rest on the above arguments and those addressed [ ] in *Singh*." Dkt. 5 at 6.

Despite this thinly supported disagreement from Respondents, the Court finds all three *Mathews* factors weigh in favor of Petitioner.

First, Petitioner's private interest is substantial. Petitioner was living openly in his community in the United States for years before Respondents abruptly returned him to physical custody. Dkt. 1. He had timely applied for asylum, was living with his sister and assisting her with work, and contributed to rent and household expenses. *Id.* ¶ 6. "[Noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020).

Further, the Court rejects the notion that Petitioner's weighty liberty interest is greatly diminished solely because he is a noncitizen in immigration proceedings. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (Freedom from restraint is at the core of the liberty protected by the Due Process Clause from arbitrary governmental action); *see also Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). And "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093, No. 2:25-cv-00647-DJC-DMC, (E.D. Cal. Mar. 3, 2025); *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *E.A. T. B.*, 795 F. Supp. 3d at 1320–21. The first *Mathews* factor weighs heavily in Petitioner's favor.

Second, the lack of procedures employed here created a substantial risk of erroneous deprivation, while additional process would offer significant value. Petitioner was re-detained without advance notice that his liberty would be revoked and without an opportunity to contest the factual or legal basis for his renewed detention before a neutral decisionmaker. *See* Dkt. 1;

Dkt. 7-3, Ex. 3. Notice and a prompt custody hearing therefore would have provided substantial value by permitting Petitioner an opportunity to respond and prepare for his possible re-detention while permitting a neutral decisionmaker to test the factual and legal grounds asserted for depriving Petitioner of his liberty. *See Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025); *E.A. T.-B.*, 795 F. Supp. 3d at 1324. Thus, the second *Mathews* factor also favors Petitioner.

Third, the Court recognizes the Government's substantial interest in the efficient administration and enforcement of the immigration laws, including its lawful authority to detain noncitizens when appropriate. But as this Court has also repeatedly recognized, custody hearings are routine proceedings, and the marginal administrative burden associated with providing such review is insufficient to outweigh the substantial liberty interest implicated by physical detention. *See E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ledesma Gonzalez v. Bostock*, No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *8 (W.D. Wash. Oct. 7, 2025). The third *Mathews* factor therefore also favors Petitioner.

On balance, the *Mathews* factors establish that the absence of any process afforded here was constitutionally inadequate. Accordingly, the Court concludes that Respondents re-detained Petitioner without providing the process due to him under the Fifth Amendment to the United States Constitution.

The ability for Petitioner to be heard and challenge the reasons for his re-detention in a neutral forum serves "as a crucial bulwark against the unfettered disregard of individual liberty interests." *G.S. v. Hermosillo*, No. 25-cv-2704-TSZ, 2026 WL 179962, at *3 (W.D. Wash. Jan. 22, 2026). Despite its constitutionally critical utility and the limited administrative burden it

entails, Respondents failed to provide such procedural protections in this case and many others like it.[4]

## IV. REMEDY

Having determined that Petitioner is detained without being provided the process due to him, the Court now determines the appropriate remedy for his unlawful confinement. As relief, Petitioner seeks immediate release from custody and a permanent injunction prohibiting any future re-detention without notice and a hearing before a neutral decisionmaker prior to re-detention. Dkt. 1 at 26–27.

//

//

---

[4] While the Court does not undertake a true accounting of factually similar cases wherein Respondents detained noncitizens without the required processes, it observes that some of the earliest cases reaching that conclusion have been cited more than one-hundred times in subsequent decisions from this District alone. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025) (according to Westlaw, this decision has been cited 329 times by courts in this District since August 19, 2025, with more than 875 total citing references); *Ramirez Tesara*, 800 F. Supp. 3d 1130 (W.D. Wash. 2025) (similarly this decision has been cited 214 times by courts in this District since September 12, 2025, with more than 356 total citing references on Westlaw).

These decisions are also cited and echoed by district courts across the country. *See, e.g. Perez Majano, v. Rokosky*, No. CV-26-05535-PHX-JZB, 2026 WL 2508262 (D. Ariz. Aug. 26, 2026); *Romero Avila v. Warden, Adelanto ICE Processing Center*, No. 5:26-CV-02701-KS, 2026 WL 2203141 (C.D. Cal. July 29, 2026); *Diaz v. Albarran*, No. 3:25-CV-09837-JSC, 2026 WL 2499439 (N.D. Cal. Aug. 25, 2026); *Cerna-Carranza v. LaRose*, No. 3:26-CV-4578-JES-JLB, 2026 WL 2446130 (S.D. Cal. Aug. 20, 2026); *Carlos U.G. v. Warden of the California City Det. Facility,* No. 1:26-CV-04427-MWJS, 2026 WL 1999947 (E.D. Cal. July 10, 2026);*Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159 (D. Nev. 2025); *J-S-D-V v. Hernandez*, No. 6:26-CV-00470-MC, 2026 WL 1346346 (D. Or. May 14, 2026); *Wu v. Stamper*, No. 1:26-CV-00090-SDN, 2026 WL 608286 (D. Me. Mar. 4, 2026); *Yin v. Maldonado*, No. 26-CV-0103 (PKC), 2026 WL 295389 (E.D.N.Y. Feb. 4, 2026); *Omar v. U.S Immigr. & Customs Enf't*, No. CV 26-00443-BAJ-EWD, 2026 WL 1663009 (M.D. La. May 29, 2026); *A.S.M. v. Lyons*, No. 26 C 5381, 2026 WL 2042774 (N.D. Ill. July 15, 2026); *Gonzalez Arias v. Woodbury Cnty. Jail*, No. C26-4041-LTS-MAR, 2026 WL 1735035 (N.D. Iowa June 16, 2026); *Vang v. Bondi*, No. 0:26-CV-1381, 2026 WL 458195 (D. Minn. Feb. 18, 2026); *Ekenge v. Baltazar*, No. 1:26-CV-00630-SBP, 2026 WL 617341 (D. Colo. Mar. 5, 2026); *Diallo v. Orozco*, No. 2:26-CV-00066-MLG-JHR, 2026 WL 608746 (D.N.M. Mar. 4, 2026);*Martinez Marcano, v. Johnson*, No. CIV-26-1389-J, 2026 WL 2350131 (W.D. Okla. Aug. 13, 2026); *Orellana v. Noem*, 807 F. Supp. 3d 745 (W.D. Ky. 2025) (reaching same conclusion without citation); *Ortiz Gutierrez v. Raycraft*, 821 F. Supp. 3d 934 (S.D. Ohio 2026) (same)*; Khabazha v. United States Immigr. & Customs Enf't*, No. 25-CV-5279 (JMF), 2025 WL 3281514, at *9 (S.D.N.Y. Nov. 25, 2025) (same); *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923 (W.D. Tex. Oct. 21, 2025) (same); *Rios Porras v. O'Neill*, No. CV 25-6801, 2025 WL 3708900 (E.D. Pa. Dec. 22, 2025) (same, collecting cases, and observing that "[t]he law is piled sky high against the Government's position.").

**A. Immediate Release**

Here, without lawful process at the outset of re-detention and in the absence of exigent circumstances, the Court finds release is the appropriate and constitutionally required remedy.[5] This conclusion aligns with a broad consensus among district courts. *See, e.g., Aucatoma, et al. v. Hernandez*, No. 2:26-cv-01253-SKV, 2026 WL 1265541, at *8 (W.D. Wash. May 8, 2026); *Rojas v. Almodovar*, 25-cv-7189 (LJL), 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025) (holding that where "detention was invalid at its inception[,]" petitioner is "entitled to release."); *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *J.Y.L.C. v. Bostock*, No. 3:25-cv-02083-AB, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

**B. Injunctive Relief**

Petitioner also requests injunctive relief. Dkt. 1 at 26–27. Particularly, Petitioner asks that Respondents be prohibited from re-detaining him during the pendency of his removal proceedings without providing written notice and a hearing prior to re-detention at which Respondents would bear the burden of proving by clear and convincing evidence that he is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks. *Id.* The Court concurs that, consistent with the requirements of due process, Respondents must provide adequate notice and a hearing before a neutral decisionmaker in conjunction with future re-detention decisions while Petitioner's removal proceedings are pending. With respect to the timing and evidentiary burden required, however, the Court declines

[5] As the Court grants Petitioner's habeas Petition and orders his release on Count Three, it need not address Counts One and Two which were alternative theories under which Petitioner argued he was entitled to release. *See* Dkt. 1.

to prescribe a particular procedural framework for all possible re-detention decisions Petitioner may face.

## V. CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

(1) Petitioner's Habeas Petition (Dkt. 1) is **GRANTED IN PART**;

(2) Respondents **SHALL release** Petitioner Elvis Jose Reyes Sira from custody **within 24 HOURS** of the filing of this Order under his most recent conditions of release, if any;

(3) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them **SHALL NOT** re-detain Petitioner unless an Immigration Court hearing is held (on adequate notice) to determine whether detention is appropriate, or until Petitioner is issued a final order of removal;

(4) Upon release, Respondents **MUST** return to Petitioner any personal property, including personal identification documents (other than a passport) and employment authorization documents; and

(5) Respondents **SHALL** file a certification **within 48 HOURS** of the issuance of this Order, confirming that the Petitioner has been released from custody and providing the date and time of his release.

Finally, the Court will entertain any post-judgment motion for attorney's fees, as requested in the Petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 3rd day of November, 2026.

Grady J. Leupold
United States Magistrate Judge